*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

LAKESHIA TULANI PEETE, also known as
LAKESHA TULANI PEETE,

        Defendant-Appellant.

UNPUBLISHED
January 16, 2020

No. 331568
Wayne Circuit Court
LC No. 14-004861-02-FC

ON REMAND

Before: SHAPIRO, P.J., and M. J. KELLY and TUKEL, JJ.

PER CURIAM.

This matter returns to this Court on remand from the Supreme Court for reconsideration of defendant's sentencing challenge in light of *People v Beck*, 504 Mich ___; ___ NW2d ___ (2019) (Docket No. 152934). For the reasons stated in this opinion, we affirm defendant's sentence for assault with intent to do great bodily harm less than murder, MCL 750.84.

Defendant was charged with first-degree felony murder and torture as a consequence of the beating and shooting death of Laquita Logan, who had been living with defendant and her family, but was suspected of being involved in the murder of defendant's husband, Kenneth Peete, who was killed during a home invasion in August 2013. The jury acquitted defendant of felony murder and torture, but convicted her of the lesser offense of assault with intent to do great bodily harm less than murder. The trial judge sentenced defendant to 80 months to 10 years' imprisonment for the assault conviction. Defendant's 80-month minimum sentence exceeds the top end of the sentencing guidelines range of 10 to 23 months by 57 months. The judge offered the following articulation in support of his sentencing decision:

> The parties and the Court have scored your guidelines. Your guidelines are 10 to 23 months. That is a straddle cell. In terms of the guidelines, I do not feel and I do not find that they accurate—no, adequately reflect the circumstances surrounding this offense.

I acknowledge fully that you were found guilty of assault with intent to do great bodily harm, but the guidelines do not adequately, in this Court's judgment, capture the brutal and vicious, prolonged beating that this defendant and her co-defendants inflicted on the victim.

Based on the testimony from trial, the victim's beating took place over the course of two to two-and-a-half hours. She was beaten so severely by the defendant and her co-defendants that the victim was almost unrecognizable. There were contusions, abrasions all over her face. Some of the injuries subjected—suggest that an object of some kind was used by one of her co-defendants, at least that was the evidence at trial. There was a fracture to the [sic] Ms. Logan's hand and injuries to her chest and legs. The injuries to the victim's head by the defendant and her co-defendants were so severe that, according to the medical examiner, they alone could have been sufficient to cause a death.

Also, the defendant was, in this Court's judgment, one of the people who set this crime in motion. It's—she supported it during the hours that it continued. She was, according to the trial testimony, one of the very first people to assault the victim.

The assault took place in her home. In fact, most of it took place in her basement. These were her guests, people that came into her house. She demanded and wanted answers to how the circumstances surrounding the murder of or death of her husband, and she used, along with her guests, force and violence to beat information out of her. She used and allowed her children to participate in this beating.

And there was also testimony that the shooter didn't decide to kill the victim until he went back upstairs and had a conversation with this defendant and others with regard to whether they would go to the Homicide Unit to report what Ms. Logan had allegedly told them. And after the defendant and others suggested that might result in criminal responsibility for themselves, defendant's co-defendant then went downstairs with a gun and shot Ms. Logan in the head.

The guidelines also do not reflect that [sic] the fact that the defendant, while on bond for first-degree murder charges in this case, was charged and actually convicted of a crime. This is an individual who was out on bond on first-degree murder charges. Although not scored in the guidelines, it is instructive for this Court to consider that a person who is facing a mandatory life sentence commits the crime of embezzlement out of I believe West Bloomfield or—

\* \* \*

. . . Bloomfield Hills for which she was convicted. This was while she was on bond for the most serious offense in the State of Michigan.

Also, the fact that the callousness with which the defendant assaulted, along with her co-defendants, an individual who had been entrusted to her and

murdered in her own home, and then abandoned that same young woman in the Wayne County morgue as an unknown and unidentified person because she—a person who she supposedly loved and cared for, that only to protect herself and her co-defendants. This cover-up continued on with the investigation by Detective Mason where she denied involvement and others.

Moreover, the Offense Variables in this case, when properly scored, are 185 months [sic, points]. The Offense Variables for this offense stop at 75 months [sic, points]. Therefore, there are 110 points, nearly one-and-a-half times the maximum guidelines range, that are unaccounted for in this sentence. So for all of these reasons, I am going to go above the minimum guidelines—I should say the maximum minimum guidelines range of 23 years [sic, months].

Here, under *Lockridge*[1] the guidelines are instructive and not mandatory, but I am considering them and have considered them as part of fashioning a proportionate and appropriate sentence. Moreover, the sentence I'm about to impose and the reasons for them are not only to demonstrate this Court's reasonableness under *Lockridge,* but these along with perhaps others would be used to support a substantial and compelling deviation in the event a higher court were to conclude that the defendant should be sentenced under the mandatory Michigan sentencing scheme that was found unconstitutional under *Lockridge*.

On appeal to this Court, defendant argued that the trial judge imposed a disproportionate and unreasonable sentence. According to defendant, to the extent that the judge believed that defendant participated in or sanctioned the shooting of Logan, the judge improperly overruled the jury, which found defendant not guilty of murder. This Court upheld the departure sentence with the following explanation:

In this case, the trial court found that the guidelines did not adequately reflect the seriousness of this offense considering the brutal, vicious, and prolonged beating suffered by Logan at the hands of [defendant] Peete and her codefendants. Peete was one of the persons who initiated the crime, she allowed it to be carried out inside her home by her guests, and she either personally participated in or supported the events that occurred over the following hours. Peete also allowed her children to participate in the beating. Logan was shot by one of the codefendants after a discussion in which Peete participated, and after Peete rejected a suggestion that they contact the police about Logan's involvement in Kenneth's homicide because she was concerned about being charged with assaulting Logan. The trial court also characterized Peete's conduct as particularly callous given that Logan was someone Peete had taken into her home and considered a sister, and yet Peete allowed Logan's body to remain in the morgue unidentified after it was discovered, and Peete attempted to cover up the crime when interviewed by the police. In addition, while Peete was on bond

---

[1] *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

for this case, she incurred an additional charge for embezzlement, for which she was convicted. The trial court also found it noteworthy that Peete's total OV score of 185 points was more than double the 75 points necessary to place her in the highest category of offense severity, thereby indicating that the guidelines range did not adequately reflect the seriousness of the offense. Given the seriousness of the circumstances surrounding the offense and the offender, including circumstances not adequately accounted for by the guidelines, the trial court's sentencing decision satisfied the principle of proportionality and it was thus reasonable under Lockridge. [*People v Peete*, unpublished opinion of the Court of Appeals, issued October 12, 2017 (Docket No. 331568), p 9.]

Defendant sought leave to appeal to the Supreme Court. While the case was pending there, that Court decided *Beck*, 504 Mich at ___; slip op at 2; which held that a defendant acquitted of a given crime may not be sentenced as if he committed that very same crime. After the *Beck* decision, the Supreme Court vacated our opinion in this case in part and directed us to reconsider the matter in light of *Beck*.[2] Having done so, we conclude that resentencing is not required.

In *Beck*, the jury acquitted the defendant of open murder but convicted him of felon in possession of a firearm and of felony-firearm, second offense. The sentencing judge imposed a departure sentence, in part, in reliance on his finding by a preponderance of the evidence that the defendant had committed the murder of which the jury had acquitted him. *Id.* at ___; slip op at 3. The Supreme Court held that the sentencing judge erred in relying on acquitted conduct in sentencing defendant, stating:

> When a jury has made no findings (as with uncharged conduct, for example), no constitutional impediment prevents a sentencing court from punishing the defendant as if he engaged in that conduct using a preponderance-of-the-evidence standard. But when a jury has specifically determined that the prosecution has not proven beyond a reasonable doubt that a defendant engaged in certain conduct, the defendant continues to be presumed innocent. "To allow the trial court to use at sentencing an essential element of a greater offense as an aggravating factor, when the presumption of innocence was not, at trial, overcome as to this element, is fundamentally inconsistent with the presumption of innocence itself." [*Id.* at ___; slip op at 18-19 (citation omitted).]

In applying this principle, the Court held that Beck must be resentenced because the sentencing judge had "punished the defendant more severely on the basis of [his] finding by a preponderance of the evidence that the defendant committed the murder of which the jury had acquitted him" and therefore violated Beck's right to due process. *Id.* at ___; slip op at 21.

---

[2] In all other respects, the Supreme Court denied leave to appeal. *People v Peete*, ___ Mich ___ (2019) (Docket No. 157051).

In contrast to *Beck*, the sentencing judge in this case did not rely on acquitted conduct in sentencing defendant.[3] The judge neither expressly nor impliedly used an essential element of either of the acquitted offenses as an aggravating factor when fashioning defendant's sentence. Instead, the judge relied on conduct underlying both the conviction offense and the acquitted offenses as aggravating factors, e.g., the brutal, vicious, and prolonged nature of the assault, defendant's role in setting the criminal transaction in motion, and her willingness to allow the assault to be carried out by guests in her home. The judge also relied on factors outside the events of the criminal transaction, e.g., the failure of the guidelines to take into account that defendant was charged with and convicted of embezzlement while out on bond in this case, and the callousness exhibited by defendant when she allowed Logan's body to remain in the morgue unidentified, even though she considered Logan to be a sister. In light of the foregoing, the judge did not base his decision to impose a departure sentence on an independent finding of guilt of one or both of the acquitted offenses and, thus, the departure sentence does not violate *Beck*.

We affirm.

/s/ Douglas B. Shapiro
/s/ Michael J. Kelly
/s/ Jonathan Tukel

---

[3] "Acquitted conduct" is conduct that "has been formally charged and specifically adjudicated by a jury." *Beck*, 504 Mich at ___; slip op at 13.